# IN THE CIRCUIT COURT FOR HOWARD COUNTY, MARYLAND

| | |
|---|---|
| PHILIPPE H. DEROSIER, JR.<br>5317 Columbia Road, Apt. H<br>Columbia, Maryland 21044<br><br>    Plaintiff,<br><br>v.<br><br>USPLABS, LLC<br>SERVE:  REGISTERED AGENT<br>           Uriel Druker<br>           USPlabs, LLC<br>           1020 E. Fremont Street<br>           Laredo, Texas 78040-6450<br><br>and<br><br>JACOB GEISSLER<br>Chief Executive Officer<br>USPlabs, LLC<br>2221 Manana Drive, Suite 120<br>Dallas, Texas 75220<br><br>    Defendants. | Civil No.: 13-C-10-83622 |

## COMPLAINT

COMES NOW the Plaintiff, PHILIPPE H. DEROSIER, JR. ("Plaintiff" or "Mr. DeRosier"), by and through undersigned counsel, and makes the following claims against Defendants, USPLABS, LLC and JACOB GEISSLER ("Defendants" or "USPLABS, LLC, et al."), and alleges as follows:

## INTRODUCTION

1. Mr. DeRosier is a world-class sprinter who has suffered greatly as a direct and proximate result of the Defendant's tortious conduct. After qualifying for the Olympic Trials in 2008, Mr. DeRosier was on the fast track to becoming one of America's top runners in the 100 and 200 meter sprints. His career was abruptly halted in 2009 after consuming a product made by the Defendants' known as "Jack3d" which contained a substance banned by the World Anti-Doping Agency known as 4-Methyl-2-Hexanamine. Mr. DeRosier brings this action in his home state of Maryland where he has suffered harm as a result of Defendants' actions.

## PARTIES

2. Plaintiff, Philippe H. DeRosier, Jr., is, and at all times material mentioned was, a Maryland resident, residing within this judicial district with an address of 5317 Columbia Road, Apt. H, Columbia, Maryland, 21044.

3. Defendant, USPlabs, LLC, on knowledge and belief, is a Texas Limited Liability Company, with an address of 2221 Manana Drive, Suite 120, Dallas, Texas, 75220 that transacts business within the state of Maryland.

4. Defendant, JACOB GEISSLER, the Chief Executive Officer of USPlabs, LLC, on knowledge and belief, is an individual having a place of business at 2221 Manana Drive, Suite 120, Dallas, Texas, 75220.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to Maryland Annotated Code, Courts and Judicial Proceedings Article, Section 6-103(b)(4), over the non-resident Defendants because the Plaintiff has suffered harm as a result of Defendants' tortious and contractual

conduct in the State of Maryland and/or because Defendants regularly do or solicit business, engage in a persistent course of conduct in Maryland or derive substantial revenue from goods, food, services, or manufactured products used or consumed in Maryland.

6. Plaintiff is informed and believes, and thereon alleges, that each and every act, event and happening hereinafter alleged to have been done, caused, suffered, allowed and permitted by defendants, or any of them, was done, caused, suffered, allowed and permitted by each and every defendant in his, her or its capacity and in the course of his, her or its duty as the agent, principal, employer, employee and/or representative of each and every other defendant.

7. The Plaintiff seeks and is entitled to a trial by jury on all counts and all issues hereinafter alleged.

## FACTS COMMON TO ALL CAUSES OF ACTION

Growing up with Olympic Dreams

8. Mr. DeRosier was born and raised in Maryland. By the time he was five years old, his dream was to be an Olympian.

9. In elementary school, Mr. DeRosier would race people and imagine himself crossing the finish line at the Olympic Games as a gold medalist.

10. At Long Reach High School in Columbia, Maryland, Plaintiff was a breakout track star at the 100 meter and 200 meter runs and was honored as the Howard County Athlete of the Year.

11. His progression as a track star continued at Saint Augustine's College where Plaintiff was a four (4) time Division II National Champion.

3

Becoming a Professional Runner

12. Upon graduation from college, the Plaintiff immediately began his career as a professional runner, competing in the World Championship Trials in 2007, and qualifying for the U.S. Olympic Trials in 2008.

13. The Plaintiff hired a manager and went overseas to compete in 2008 running in meets in Italy, France, Finland, and other European nations, earning considerable prize money and awards on the European Track Circuit. He also spoke to representatives from Nike about a sponsorship deal.

14. In 2009, Plaintiff went overseas again to compete on the European Track Circuit after winning the prestigious Penn Relays Olympic Developmental 100 meter race.

15. Plaintiff competed well in Europe in early 2009.

16. Plaintiff had never tested positive for a banned substance up to that point in his career.

The Plaintiff takes "Jack3d" and tests positive for a banned substance.

17. On or about June 11, 2009, the Plaintiff was told about a supplement known as Jack3d, made by USPlabs, LLC (the "Supplement"). Plaintiff was told that the Supplement was "absolutely clean" and contained no banned substances.

18. To be cautious, Plaintiff carefully read the label and searched the USPlabs, LLC's website.

19. The Supplement's label did not reveal that it contained 4-Methyl-2-Hexanamine as an ingredient. The label in fact did not reveal that it contained any substance banned by the World Anti-Doping Agency.

4

20. USPlabs, LLC's website stated the company's products were "safe" and contained "only the highest quality ingredients available."

21. After his thorough review of the Supplement's label and the USPlabs, LLC's, website, Plaintiff was satisfied that the Supplement was safe to take while competing as a world-class sprinter.

22. Plaintiff took the Supplement several times on June 11, 2009 and June 12, 2009.

23. Plaintiff was so certain that the Supplement was "safe" as advertised that he declared it on his pre-race Declaration Form. Plaintiff then competed in a meet in Istanbul, Turkey on June 13, 2009.

24. On June 13, 2009, after competing at the meet in Istanbul, Plaintiff was required to submit to an in-competition drug test. Since Plaintiff had never knowingly taken a banned substance, he did not think twice about submitting his urine sample as part of normal protocol at international track and field competitions.

25. In late summer 2009, Plaintiff was stunned to learn that the urine sample he had submitted on June 13, 2009 in Istanbul had tested positive for 4-Methyl-2-Hexanamine, a substance banned by the World Anti-Doping Agency.

<u>Plaintiff is charged with a doping offense.</u>

26. Plaintiff began to immediately serve a voluntary suspension while the anti-doping charge was adjudicated. The United States Anti-Doping Agency ("USADA") sought the maximum two-year suspension against Plaintiff.

27. In preparing for an arbitration to challenge the charges against him, Plaintiff hired the prestigious Anti-Doping Sciences Institute in Los Angeles ("ADSI") as

5

an expert to test the Supplement and confirm that the Supplement did in fact contain a substance banned by the World Anti-Doping Agency, known as 4-Methyl-2-Hexanamine. On November 12, 2009 ADSI issued its analytical report confirming that the Supplement did in fact contain 4-Methyl-2-Hexanamine.

28. Just prior to the arbitration to adjudicate the charges levied against Plaintiff, USADA sought to resolve the matter by offering Plaintiff a six-month suspension. Plaintiff accepted the six-month suspension on advice of counsel. <u>Plaintiff suffers as a result of taking "Jack3d" and committing a doping offense.</u>

29. Plaintiff was suspended from competing as a world-class sprinter from August 23, 2009 until February 23, 2009. In addition, Plaintiff forfeited all awards, points and prize money he earned at the meet in Istanbul and a subsequent meet he competed in prior to learning of his positive test.

30. Also, as a result of his positive test and suspension, Plaintiff has suffered mightily by losing income, reputation, and the opportunity to continue his career as a world-class sprinter.

31. When Plaintiff returned to the track this spring a "doper" he found the landscape had changed for him dramatically. Nike is no longer speaking to him about a sponsorship deal, he cannot find a manager to secure his entry in world-class meets and pay for his travel costs, and he has even been made to feel like an outcast in his hometown. In short, Plaintiff's life has been altered in a very negative way as the result of his ingestion of the Supplement in June 2009. He has been harmed mightily.

32. In June 2010, Plaintiff was unable to compete in the US National Track and Field Championships despite qualifying for the meet because he could not find a

6

manager willing to pay his travel expenses since track managers routinely do not represent "dirty" athletes. Plaintiff had beaten many of the runners who competed in the 100 meter and 200 meter final at the US National Track and Field Championships and was devastated that he could not compete. Left with no other choice, Plaintiff has taken a break from competing for the remainder of 2010.

33. Plaintiff will not travel to Europe to compete in 2010 and his career and dream of competing in the Olympics may be over.

## COUNT I
## NEGLIGENCE

34. Plaintiff repeats and realleges all of the allegations contained in paragraphs 1 through 33 of this Complaint as though each were set forth and alleged herein in full.

35. At all times relevant to this Complaint, Defendants engaged in the business of manufacturing, marketing, distributing, and selling the Supplement to competitive athletes, like the Plaintiff, and members of the general public.

36. At all times relevant to this Complaint, the Supplement was produced at Defendants' manufacturing facility and was distributed and sold to stores in and around Maryland, and elsewhere throughout the United States.

37. In June 2009, Plaintiff ingested the Supplement, doing so in a manner that was reasonably foreseeable and intended by Defendants.

38. At the times relevant to this Complaint, Defendants owed a duty to exercise reasonable care and caution in the production of the Supplement and in the subsequent distribution and sale of the Supplement to ensure the Supplement was safe, legal, wholesome and otherwise fit for consumption by competitive athletes, like the

7

Plaintiff, and the general public.

39. Defendants knew or through the exercise of reasonable care should have known that the Supplement contained 4-Methyl-2-Hexanamine, a banned substance under the World Anti-Doping Code ("WADC").

40. Defendants were negligent and failed to exercise ordinary care in performing their duties to Plaintiff. Such negligent acts and omissions include, but are not limited to, the following:

    a. Carelessly and negligently offered to Plaintiff a product containing a banned substance under the WADC;

    b. Carelessly and negligently failed to warn Plaintiff of the presence of a banned substance under the WADC in the Supplement;

    c. Carelessly and negligently failed to provide accurate information about the Supplement so the Plaintiff could make informed decisions;

    d. Carelessly and negligently failed to adhere to industry standards;

    e. Carelessly and negligently failed to adhere to government regulations in manufacturing, marketing, and selling the Supplement;

    f. Carelessly and negligently failed to disclose known dangers.

41. As a direct and proximate result of the acts and omissions of the Defendants, Plaintiff suffered injuries.

42. As a consequence of these injuries, Plaintiff has sustained damages as more specifically detailed in the section of this complaint denominated as "Damages."

43. No negligence on the part of the Plaintiff contributed to the happening of the occurrence.

WHEREFORE, Plaintiff, PHILIPPE H. DEROSIER, JR., demands judgment against Defendants, USPLABS, LLC and JACOB GEISSLER, in the amount of Three Hundred Thousand Dollars ($300,000) as compensatory damages plus interest and costs and such other and further relief as this Court deems proper.

## COUNT II
## STRICT LIABILITY IN TORT

44. Plaintiff repeats and realleges all of the allegations contained in paragraphs 1 through 43 of this Complaint as though each were set forth and alleged herein in full.

45. At all times relevant to this Complaint, Defendants were in the business of manufacturing, marketing, distributing, and selling the Supplement to competitive athletes, like the Plaintiff, and members of the general public.

46. At all times relevant to this Complaint, the Supplement was produced at Defendant's manufacturing facility and distributed and sold to stores, and placed in the stream of commerce, in and around Maryland, and elsewhere throughout the United States.

47. At all times relevant to this Complaint, the Supplement contained 4-Methyl-2-Hexanamine, a prohibited stimulant under the WADC.

48. In June 2009, Plaintiff ingested the Supplement, doing so in a manner that was reasonably foreseeable and intended by Defendants at the time the product was placed in the stream of commerce.

49. Defendants are strictly liable in tort for all injuries, damages and losses that have or may result because the Supplement was defective for its intended use and unreasonably dangerous to Plaintiff in one or more of the following respects:

9

a. No warning was given that the product contained a banned substance under the WADC, or was otherwise unfit for ingestion.

b. The instructions provided by Defendants for the Supplement failed to advise or inform any and all foreseeable users of the hidden dangers that would arise from a reasonably anticipated use of the Supplement.

50. At all times relevant to this complaint, by failing to identify the presence of a prohibited stimulant under the WADC, Defendants placed into commerce product that was dangerous to an extent beyond that which would be contemplated by those, like the Plaintiff, with ordinary knowledge common to the community as to the Supplement's characteristics.

51. Furthermore, by failing to accurately disclose the ingredients of the Supplement on the label, Defendants manifested a knowing and reckless indifference toward, and a disregard for the Plaintiff's ability to make informed decisions about the products he ingests.

52. As a proximate result of one or more of the foregoing defective conditions, making this product unreasonably fit, suitable or safe for its intended use when it left the control of Defendants, Plaintiff sustained injuries after he ingested the Supplement.

53. As a consequence of these injuries, Plaintiff has sustained damages as more specifically detailed in the section of this complaint denominated as "Damages."

WHEREFORE, Plaintiff, PHILIPPE H. DEROSIER, JR., demands judgment against Defendants, USPLABS, LLC and JACOB GEISSLER, in the amount of Three Hundred Thousand Dollars ($300,000) as compensatory damages plus interest and costs

and such other and further relief as this Court deems proper.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

54.     Plaintiff repeats and realleges all of the allegations contained in paragraphs 1 through 53 of this Complaint as though each were set forth and alleged herein in full.

55.     At all times relevant to this Complaint, Defendants were merchants of the Supplement and were in the business of manufacturing, marketing, distributing, and selling the Supplement to competitive athletes, like the Plaintiff, and members of the general public.

56.     At all times relevant to this Complaint, Defendants owed to Plaintiff a warranty that the Supplement was merchantable; and fit for the ordinary purposes for which such goods are used; would not create an unreasonable risk of injury to consumers; and are adequately contained, packaged, and labeled as required.

57.     In June 2009, Plaintiff ingested the Supplement, doing so in a manner that was reasonably foreseeable and intended by Defendants.

58.     Notwithstanding its warranty, the Defendants manufactured, distributed and sold the Supplement in a manner that was unfit for consumption because product's label did not identify the presence of 4-Methyl-2-Hexanamine, a banned substance under the WADC.

59.     As a proximate result of Defendants breach of the implied warranty of merchantability of the Supplement by failing to identify the presence of a banned substance under the WADC, Plaintiff ingested the Supplement and sustained injuries.

60.     As a consequence of these injuries, Plaintiff has sustained damages as

11

more specifically detailed in the section of this complaint denominated as "Damages."

WHEREFORE, Plaintiff, PHILIPPE H. DEROSIER, JR., demands judgment against Defendants, USPLABS, LLC and JACOB GEISSLER, in the amount of Three Hundred Thousand Dollars ($300,000) as compensatory damages plus interest and costs and such other and further relief as this Court deems proper.

## COUNT IV
## NEGLIGENT MISREPRESENTATION

61. Plaintiff repeats and realleges all of the allegations contained in paragraphs 1 through 60 of this Complaint as though each were set forth and alleged herein in full.

62. At all times relevant to this Complaint, Defendants owed a duty to competitive athletes, like the Plaintiff, and the general public, to disclose and warn if the Supplement was not safe, legal, wholesome, and otherwise fit for consumption, and to not conceal or misrepresent such truth.

63. Defendants intentionally misrepresented the quality and contents of the Supplement, and intended that competitive athletes, like the Plaintiff, and the general public would rely upon these misrepresentations.

64. Defendants knew, or in the exercise of reasonable care, should have known, competitive athletes, like the Plaintiff, and the general public would rely on its representations to determine whether the Supplement was safe, legal, wholesome, and otherwise fit for consumption, and that if Defendants' representations were erroneous, then the Plaintiff would suffer loss or injury.

65. At all times relevant to this Complaint, Defendants knew or through the exercise of reasonable care should have known that the Supplement contained 4-Methyl-

2-Hexanamine, a prohibited stimulant under the WADC.

66. By failing to disclose or warn Plaintiff that the Supplement contained a prohibited stimulant under the WADC, Defendants negligently and recklessly misrepresented to the Plaintiff that the company's products were safe, legal, wholesome, or otherwise fit for consumption.

67. The Plaintiff ingested the Supplement in justifiable reliance upon representations made directly by Defendants, through and at its facilities or through websites, representatives, signs, advertising and labeling, that the Supplement was safe, legal, wholesome and otherwise fit for consumption.

68. These misrepresentations were made under circumstances in which Defendants either knew, or in the exercise of reasonable care should have known, that the facts of such representations were not true, or were not known to be true, as the product was not reasonably safe, legal, wholesome or otherwise fit for consumption by competitive athletes, like the Plaintiff, and the general public.

69. The contents of the Supplement, namely that it contained a prohibited stimulant under the WADC, were a direct and proximate cause of the injuries suffered by Plaintiff, a world-class athlete subject to drug testing.

70. Plaintiff has suffered damages as a direct consequence of his injuries. Plaintiff's damages are more fully set forth below in the section of this complaint entitled "Damages."

WHEREFORE, Plaintiff, PHILIPPE H. DEROSIER, JR., demands judgment against Defendants, USPLABS, LLC and JACOB GEISSLER, in the amount of Three Hundred Thousand Dollars ($300,000) as compensatory damages plus interest and costs

and such other and further relief as this Court deems proper.

## COUNT V
## FRAUDULENT CONCEALMENT

71. Plaintiff repeats and realleges all of the allegations contained in paragraphs 1 through 70 of this Complaint as though each were set forth and alleged herein in full.

72. At all times relevant to this Complaint, Defendants knew or through the exercise of reasonable care should have known that the Supplement contained 4-Methyl-2-Hexanamine, a banned substance under the WADC.

73. Defendants fraudulently concealed and intentionally failed to disclose to competitive athletes, like the Plaintiff, and the general public, that the Supplement contained a prohibited stimulant under the WADC, through and at its facilities or through websites, representatives, signs, advertising and labeling so as to defraud or deceive the Plaintiff into using the Supplement without knowledge of the defect.

74. The Plaintiff ingested the Supplement in justifiable reliance upon false and fraudulent representations made directly by Defendants, through and at its facilities or through websites, representatives, signs, advertising and labeling, and on Defendants' deliberate silence, that the Supplement was safe, legal, wholesome and otherwise fit for consumption.

75. Except for Defendants' representations regarding the safety, legality, wholesomeness, and general fitness for consumption of the Supplement, competitive athletes, like the Plaintiff, and the general public never would have used the Supplement.

76. There was no reasonable means for Plaintiff to make himself aware of the defect, since Defendants have retained tight control of the relevant information

concerning the defect.

77. The contents of the Supplement, namely that it contained a banned substance under the WADC, were a direct and proximate cause of the injuries suffered by Plaintiff, a world-class athlete subject to drug testing.

78. Plaintiff has suffered damages as a direct consequence of his injuries. Plaintiff's damages are more fully set forth below in the section of this complaint entitled "Damages."

WHEREFORE, Plaintiff, PHILIPPE H. DEROSIER, JR., demands judgment against Defendants, USPLABS, LLC and JACOB GEISSLER, in the amount of Three Hundred Thousand Dollars ($300,000) as compensatory damages plus interest and costs and such other and further relief as this Court deems proper.

## COUNT VI
## UNFAIR OR DECEPTIVE TRADE PRACTICES UNDER THE MARYLAND CONSUMER PROTECTION ACT

79. Plaintiff repeats and realleges all of the allegations contained in paragraphs 1 through 78 of this Complaint as though each were set forth and alleged herein in full.

80. The Plaintiff is a consumer within the meaning of the Maryland Consumer Protection Act (the "Act"), CL § 13-301, et seq.

81. The Supplement is a consumer good within the meaning of the Act.

82. By failing to disclose or warn that the Supplement contained a banned substance under the WADC, Defendants engaged in fraudulent and deceptive conduct in the marketing and sale of the Supplement so as to mislead consumers, including the Plaintiff, into believing the Supplement was safe, legal, wholesome and otherwise fit for

15

consumption.

83. Defendants made oral and written statements that had the capacity, tendency or effect of deceiving or misleading consumers, including the Plaintiff, into believing the Supplement was safe, legal, wholesome, and otherwise fit for consumption.

84. Defendants concealed and failed to state material facts, including the fact the Supplement contained a banned substance under the WADC, and this failure deceived or tended to deceive consumers, including the Plaintiff, into believing the Supplement was safe, legal, wholesome, and otherwise fit for consumption.

85. Defendants engaged in deception, fraud, misrepresentation, knowing concealment, suppression, and the omission of material facts, including the fact the Supplement contained a banned substance under the WADC, with the intent that consumers, including the Plaintiff, would rely on the same, in connection with the Defendants' promotion and sale of the Supplement.

86. Upon information and belief, at the time Defendants engaged in the aforementioned practices, they did so with the intent to unfairly compete with other supplement manufacturers and/or distributors for the patronage of competitive athletes, like the Plaintiff, and the general public.

87. In June 2009, Plaintiff ingested the Supplement, doing so in a manner that was reasonably foreseeable and intended by Defendants.

88. As a direct and proximate result of the Defendants deceptive and dishonest sales practices, the Plaintiff ingested the Supplement and suffered injuries.

89. Plaintiff has suffered damages as a direct consequence of his injuries. Plaintiff's damages are more fully set forth below in the section of this complaint entitled

"Damages."

WHEREFORE, Plaintiff, PHILIPPE H. DEROSIER, JR., demands judgment against Defendants, USPLABS, LLC and JACOB GEISSLER, in the amount of Three Hundred Thousand Dollars ($300,000) as compensatory damages plus interest and costs and such other and further relief as this Court deems proper.

## DAMAGES

90. Plaintiff repeats and realleges all of the allegations contained in paragraphs 1 through 89 of this Complaint as though each were set forth and alleged herein in full.

91. At the time and place of the events described herein the Defendants owed a duty of reasonable care to the Plaintiff to avoid causing injury to the Plaintiff.

92. As a direct and proximate result of the acts and omissions of Defendants, Plaintiff has suffered significant injuries. Said injuries include but are not limited to intrusion of Plaintiff's body with dangerous substances that are harmful to Plaintiff injuring him in such a way as to not be able to complete his duties and job as a professional athlete and Olympic hopeful. Plaintiff's injuries also include the loss of reputation. As a consequence of these injuries, Plaintiff has incurred the following damages in amounts to be proven at trial:

    a.    Loss of past earnings and earning capacity;

    b.    Loss of future earnings and earning capacity;

    c.    Non-economic damages sustained in the past and those reasonably probable to be sustained in the future (including pain, suffering, inconvenience, physical impairment, or other nonpecuniary injury); and

d.  Other damages.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays the judgment, order and decree of this Court is as follows:

1.  Judgment for Plaintiff against Defendants for general damages in an amount of $1.8 million consistent with the allegations contained herein and to be proven at trial.

2.  Judgment for the Plaintiff against Defendants for incidental and consequential damages and penalties in an amount consistent with the allegations contained herein and to be proven at trial.

3.  Judgment for the Plaintiff against Defendants for reasonable attorneys' fees where applicable, in an amount consistent with the allegations contained herein and to be proven at trial.

4.  Judgment for Plaintiff against Defendants in an amount as supported by the allegations in this Complaint and the evidence adduced at trial that Plaintiff be awarded the costs of suit incurred.

Respectfully submitted,

STEVEN VANGRACK LAW, P.C.

_____
Steven VanGrack, Esq.
Maryland Bar No. 1235
Steven VanGrack Law, P.C.
2273 Research Blvd., Suite 200
Rockville, Maryland 20850
(301) 548-6734
steven@stevenvangracklaw.com

PRETI FLAHERTY BELIVEAU & PACHIOS LLP

_Paul J. Greene by SVG_
Paul J. Greene, Esq. (Pro hac vice)
Preti Flaherty Beliveau & Pachios LLP
One City Center
PO Box 9546
Portland, Maine 04112-9546
(207) 791-3000
pgreene@preti.com

*Attorneys for Plaintiff*
Philippe H. DeRosier, Jr.