## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| PHILIPPE H. DEROSIER, JR., | : | |
| | : | |
| v. | : | Civil No. CCB-10-2559 |
| | : | |
| | : | |
| USPLABS, LLC | : | |
| | : | |
| and | : | |
| | : | |
| JACOB GEISSLER | : | |

## MEMORANDUM

This suit arises from plaintiff Philippe DeRosier, Jr.'s use of a supplement called Jack3d,

manufactured by defendant USPLabs.  Now pending before the court are defendants' motion to

exclude the testimony of plaintiff's proposed expert witness, Eric T. Merriweather, defendants'

motion for summary judgment, and defendants' request for attorney's fees.  The matter has been

fully briefed, and no hearing is necessary.  *See* Local Rule 105.6.  For the reasons that follow, the

defendants' motion to exclude Mr. Merriweather's testimony and motion for summary judgment

will be granted.  The defendants' request for attorney's fees will be denied.


## Background

In June 2009, in advance of a track meet in Istanbul, Turkey, Maryland-based sprinter

Philippe DeRosier, Jr. consumed Jack3d in order to "give him energy" for his race.  (Deposition

of Philippe DeRosier, ECF No. 86, Exh 1, at 106.)  Approximately two months later, Mr.

DeRosier was informed by anti-doping officials that he had tested positive for a banned

substance, 2-Methyl-2-Hexamine (MHA).  The U.S. Anti-Doping Agency (USADA) took action

against Mr. DeRosier under a "catch-all" provision in the World Anti-Doping Agency's list of

1

internationally prohibited substances that bans all "substances with a similar chemical structure or similar biological effect(s)" to those enumerated.[1]  (ECF No. 63, Exh. 18, at 7.)  Shortly thereafter, Mr. DeRosier entered into an agreement with the USADA to voluntarily accept a six-month suspension and retain his opportunity to try out for the 2012 Olympics.  (ECF No. 63, Exh. 17.)

Mr. DeRosier promptly returned to competition in February 2010 when his suspension ended.  (Deposition of Philippe DeRosier, ECF No. 86, Exh. 1, at 267.)  According to his complaint, however, the stigma from being identified as a "doper" prevented Mr. DeRosier from finding a manager "to secure his entry into world-class track meets and pay for his travel costs." (Complaint, ECF No. 2, at 6.)  Mr. DeRosier claims that he was consequently unable to compete in the 2010 U.S. National Track and Field Championships and has not been able to pursue his sprinting career since then.  (DeRosier Deposition, ECF No. 86, Exh. 1, at 279-80.)  Mr. DeRosier also alleges that he lost out on valuable shoe endorsement contracts and potential future employment as a coach due to his consumption of MHA.

Mr. DeRosier filed a complaint against USPLabs, LLC, and Jacob Geissler, Chief Executive Officer of USPLabs.[2]  The complaint sets forth causes of action in negligence, strict liability, breach of implied warranty of merchantability, negligent misrepresentation, fraudulent concealment, and unfair or deceptive trade practices under the Maryland Consumer Protection Act.  Mr. DeRosier alleges loss of past earnings and earning capacity, future earnings and

---

[1] The USADA took action against Mr. DeRosier for taking MHA on the grounds that it was an analog of Tuaminophetane, a substance explicitly identified in the "stimulants" section of the 2009 World Anti-Doping Agency's list of prohibited substances.  (Letter from International Association of Athletics Federation, ECF No. 86, Exh. 10.)  Methylhexaneamine was added as a banned stimulant to the WADA list in 2010, *after* officials took action against Mr. DeRosier. *Compare* 2009 WADA Prohibited List (ECF No. 63, Exh. 18, at 7) *and* 2010 WADA Prohibited List (ECF No. 63, Exh. 20, at 7).

[2] Mr. DeRosier originally filed his complaint in the Circuit Court for Howard County on or about July 31, 2010.  In September 2010 the defendants removed the case to federal court. (ECF No. 1.)

earning capacity, and non-economic losses due to the defendants' failure to warn him that the supplement contained a substance banned under the catch-all provision in WADA's list of prohibited substances.[3]  Mr. DeRosier seeks $1.8 million in general damages.

## Motion to Exclude Testimony

The defendants move to exclude the testimony of Mr. DeRosier's proffered expert witness, Mr. Eric Merriweather.  (*See* Motion to Exclude Plaintiff's Proposed Expert Witness, ECF No. 64.)  Mr. DeRosier identified Mr. Merriweather as a "damages expert" and submitted a report by Mr. Merriweather to substantiate his claim for economic damages.  (Report of Eric T. Merriweather, ECF No. 64, Exh. 1; Opposition to Motion for Summary Judgment, ECF No. 82, at 27.)  Mr. Merriweather's report asserts that "if not for his positive test for a banned substance in 2009," Mr. DeRosier would have received endorsement contracts and appearance fees and prize money, including a five-year base salary from a shoe endorsement contract totaling $450,000.  (*Id.* at 5.)  The report concludes that Mr. DeRosier would have earned approximately $1,685,500 over five years if he had not taken the Jack3d supplement.  (*Id.*)

When testimony concerning scientific, technical, or other specialized knowledge is offered in support of a party's claim, the trial judge must ensure under Rule 702 of the Federal Rules of Evidence that any such testimony is "not only relevant, but reliable."  *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 589 (1993); *see also Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 147–49 (1999) (extending *Daubert's* analysis of expert testimony based on "scientific" knowledge to expert testimony based on "technical" and "other specialized" knowledge); *Cooper v. Smith & Nephew, Inc.,* 259 F.3d 194, 199-200 (4th Cir. 2001).  To fulfill that responsibility, the trial court must conduct "a preliminary assessment of

---

[3] Defendants do not contest that the Jack3d supplement Mr. DeRosier consumed contained MHA.

whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert,* 509 U.S. at 592-93; *see also United States v. Barnette,* 211 F.3d 803, 815 (4th Cir. 2000).[4]

The proponent of expert testimony bears the burden of establishing its admissibility. *Maryland Cas. Co. v. Therm-O-Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998). The defendants argue that Mr. Merriweather's testimony is inadmissible because he lacks the qualifications to provide an informed estimation of damages and because he employed an unreliable and unprincipled methodology to reach his conclusions. They contend that Mr. Merriweather has neither the expertise nor the experience to qualify as a damages expert and that his credibility is further undermined by the fact that he is Mr. DeRosier's "friend" and "mentor" and wrote the report free of charge. (Deposition of Eric Merriweather, ECF No. 64, Exh. 2, at 14, 26; DeRosier Deposition, ECF No. 64, Exh. 3, at 9.)

Mr. Merriweather's report provides specific estimates as to Mr. Desosier's lost earnings and earning capacity, but, as the defendants contend, the report fails to support those estimates with even the most basic information about Mr. DeRosier's past records or rankings or with relevant industry standards. The report opens by stating that Mr. DeRosier had "the ability to become one of the top 5 athletes in our country and the top 15 in the world in his events, the 100 and 200 meter dash," but neither the report nor Mr. Merriweather's subsequent deposition

---

[4] The Supreme Court in *Daubert* identified several factors that may bear on a trial judge's determination of the reliability of an expert's testimony. Those factors include: (1) whether a theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its operation; and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community. *See Daubert,* 509 U.S. at 592-94. Beyond that inquiry, however, "the *Daubert* court expressly declined to require consideration of any other specific factors, stating that '[m]any factors will bear on the inquiry, and we do not presume to set out a definitive checklist or test.'" *Maryland Cas. Co.,* 137 F.3d at 784.

provides information that would be necessary to support that assertion, such as Mr. DeRosier's

previous rankings, race times, or career trajectory.  (Merriweather Report, ECF No. 64, Exh. 1, at

1.)  For example, the report projects that Mr. DeRosier would have earned $658,000 for top

scores in major national and international competitions and $500,000 in appearance fees and

prize money, but does not provide a specific breakdown as to how many races Mr. DeRosier

would have to run per year and how he would have to rank in those races to achieve those

earnings.  Moreover, the report does not set forth the qualification criteria for these races or

explain why Mr. DeRosier could be expected to qualify for those races based on his past

performance.  (*Id.*, at 2-5.)  The report also does not offer any information about industry

standards to support its projections.

Indeed, Mr. Merriweather stated in deposition that he did not know – either at the time of

his deposition or at the time of writing the report – Mr. DeRosier's past rankings.  (Merriweather

Deposition, ECF No. 64, Exh. 2, at 176.)  He did not know how many races Mr. DeRosier had

run in previous years.  (*Id.* at 165.)  Although the report projected Mr. DeRosier's profits over a

five-year timeframe, Mr. Merriweather stated that he did not know Mr. DeRosier's age (*id.* at

164), to say nothing of his health, projected career length, or trends in his sprinting speeds over

time.  Furthermore, although the purpose of the report is to estimate financial damages, it offers

no information about Mr. DeRosier's past earnings as a competitive runner.[5]  Mr. Merriweather

---

[5] The absence of information about Mr. DeRosier's past earnings is particularly troubling because his
responses to interrogatories reveal that he earned only $5,451 in 2008 and $8,512.27 in 2009 – a far cry
from the $1,685,500 that Mr. Merriweather projects for the following five years.  (DeRosier
Interrogatories, ECF No. 63, Exh. 7, at 3; *see also* DeRosier Deposition, ECF No. 86, Exh. 1, at 326-27.)
Although Mr. DeRosier's past earnings are not completely determinative of his future earnings,
supporting the enormous projected rise in earnings would require more evidence and reasoning than is
currently before the court.  Moreover, with respect to the projected shoe endorsement, Mr. DeRosier has
offered no support for his claim that Nike intended to enter into a lucrative endorsement contract with
him, then subsequently lost interest after he was associated with doping.  (*See* Complaint, ECF No. 2, at 4,
6; DeRosier Interrogatories, ECF No. 64, Exh. 1, at 10-11).  To the contrary, Nike field representative

stated in deposition that he could not remember exactly how he reached some of his financial estimates.  (*Id.* at 256-58.)

In sum, Mr. Merriweather's report and subsequent deposition are utterly lacking in information about industry standards, the earnings and racing practices of similarly situated athletes, and even basic personal facts about Mr. DeRosier that could support his estimates about lost earnings and earning capacity.  This court therefore must conclude that there is "simply too great an analytical gap between the data and the opinion proffered" to admit Mr. Merriweather's testimony.  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  "An essential part of the Court's gate keeping function is to ensure that the expert testimony is more than mere speculation," *Giddings v. Bristol-Myers Squibb Co*., 192 F. Supp. 2d 421, 425 (D. Md. 2002), and this court cannot find that Mr. Merriweather's testimony, though sincere, rises above the level of conjecture.  Thus, without reaching the question of Mr. Merriweather's qualifications as an expert witness, his testimony must be excluded based on its wholly speculative and conclusory methodology.

## Summary Judgment

A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense –  on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion. Fed.R.Civ.P. 56(a).  In addition,

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions,

---

Llewellyn Starks expressly denied ever intending to pursue an endorsement contract with Mr. DeRosier. (*See* Deposition of Llewellyn Starks, ECF No. 64, at 10-11).

documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*See* Fed.R.Civ.P. 56(c)(1).

Under the Supreme Court standard of review, this does not mean that any factual dispute will defeat the motion:

By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986) (emphasis in original).

The party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Once the moving party has met that burden, the non-moving party must come forward with specific facts and demonstrate that such an issue does, in fact, exist.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 525 (4th Cir.2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)).

Absent the evidence proffered by Mr. Merriweather, Mr. DeRosier lacks evidence of damages, which are a required element in each of his claims: negligence,[6] strict liability,[7]

---

[6] *See Johnson v. Valu Food, Inc.*, 132 Md. App. 118, 126 (2000) (holding that "it is necessary to prove actual damages to obtain a recovery in negligence actions"); *see also Muthukumarana v. Montgomery Co.*, 370 Md. 447, 486 (2002) (holding that in order to "maintain an action in negligence, a plaintiff must assert . . . that [he or she] suffered actual injury or loss").  Moreover, even if Mr. DeRosier could

negligent misrepresentation,[8] fraudulent concealment,[9] breach of implied warranty of

merchantability,[10] and unfair or deceptive trade practices under the Maryland Consumer

Protection Act.[11]

Mr. DeRosier fails to meet his burden to prove any of the damages he alleges.  This is

particularly so because loss of future earnings and earning capacity constitute the vast majority

of his alleged damages.  (*See* Merriweather Report, ECF No. 64, Exh. 1).  Maryland courts have

held that, although loss of future earnings and earnings capacity may be recoverable in tort,

"[f]uture damages must be established with reasonable certainty, and must not rest upon

speculation or conjecture."  *Lewin Realty III, Inc. v. Brooks*, 138 Md. App. 244, 279, *aff'd*, 378

Md. 70 (2003).[12]  Damages "based on future consequences of an injury . . . cannot be recovered

---

demonstrate damages in this case, it is unlikely that he could prevail in negligence or strict liability
because of the purely economic nature of his alleged losses.  Maryland case law has permitted only very
limited exceptions to the general rule against recovery in tort for purely economic losses, and those
exceptions relate to physical injury or harm to tangible property, *see A.J. Decoster Co. v. Westinghouse
Elec. Corp.*, 333 Md. 245, 250 (1994) ("[P]urchasers claiming physical injury or harm to tangible things
may recover under negligence or strict liability in tort."), and to claims involving defects that produce a
substantial and unreasonable risk of death or personal injury, *see Lloyd v. Gen. Motors Corp.*, 397 Md.
108, 124 (2007) (recovery may be available in strict liability and negligence if "the product at issue
creates a *dangerous condition,* one that gives rise to a *clear danger of death or personal injury.*")
(emphasis in original).

[7] *See Lloyd,* 397 Md. at 134 (holding that a plaintiff must demonstrate injury or harm in order to recover
in strict liability).

[8] *See Abercrombie v. Nationwide Mut. Ins. Co.,* 999 F. Supp. 660, 662 (D. Md. 1998), *aff'd*, 168 F.3d 481
(4th Cir. 1999)) (holding that a "claim for negligent misrepresentation lies *if . . . the plaintiff suffers
damage* proximately caused by the defendant's negligence.") (emphasis added).

[9] *See Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 628-29 (D. Md. 2003)) (holding
that in order to prevail on a claim of fraudulent concealment, "*Plaintiff must prove . . . [that he or she]
suffered damages* as a result of Defendant's concealment.")  (emphasis added).

[10] *See Crickenberger v. Hyundai Motor Am.*, 404 Md. 37, 49-50 (2008) ("[T]he plaintiff in a breach of
warranty claim must establish . . . a causal relationship between the defect and *plaintiff's damages*.")
(emphasis added).

[11] *See Berg v. Byrd*, 124 Md. App. 208, 214-15 (1998) ("The Consumer Protect Act . . .  by its express
terms, may be invoked only to compensate a consumer for actual injury or loss.")*; see also Barksdale v.
Wilkowsky,* 192 Md.App. 366, 404 (2010 ("[A] private consumer bringing an action under the [M]CPA
must show actual injury or loss sustained as the result of a practice prohibited under the [M]CPA.").

[12] The Court of Special Appeals of Maryland has noted that "[p]roof of impairment of earning capacity
does not require the degree of specificity as does proof of loss of future wages."  *Anderson v. Litzenberg*,
115 Md. App. 549, 574 (1997).  There, the court affirmed the award of damages for lost earning capacity

if future consequences are 'mere possibilities.'"  *Pierce v. Johns-Manville Sales Corp.,* 296 Md. 656, 666 (1983).  Without Mr. Merriweather's testimony, Mr. DeRosier does not establish his future lost earnings or earning capacity with any degree of reliability.

Mr. DeRosier claims that Professor Richard Edelman and Kathleen Sampeck also serve as damages experts, but neither their reports nor their deposition testimony supports that contention.  (*See* Plaintiff's Opposition to Motion for Summary Judgment, ECF No. 82, at 27.) First, both proffered experts explicitly noted their reliance on Mr. Merriweather's conjectures in reaching their own conclusions.  According to Professor Edelman, his report simply calculated Mr. DeRosier's lost earnings "based on . . . the income that Mr. Merriweather opines Mr. DeRosier could have made absent incident."  (Report of Richard B. Edelman, ECF No. 82, Exh. 16, at 3.)  At deposition, Professor Edelman stated that he "d[id] the numbers and mathematics" based on the figures Mr. Merriweather gave him, taking all information from Mr. Merriweather "at face value."  (Deposition of Richard B. Edelman, ECF No. 86, Exh. 18, at 26.)  He stated in deposition that he had "no opinion" about the feasibility or accuracy of Mr. Merriweather's projections regarding Mr. DeRosier's lost earnings and that his report is "just a numerical valuation."  (*Id.* at 37.)  Any evaluation of the feasibility or validity of Mr. Merriweather's projections would be "totally outside [his] area."  (*Id.*)  Professor Edelman's report and accompanying deposition therefore cannot support Mr. DeRosier's economic damages claim.

Like Professor Edelman, Kathleen Sampeck explicitly acknowledged in her report that she accepted and relied upon Mr. Merriweather's projections about Mr. DeRosier's lost earnings and earning capacity in reaching her conclusion.  (Report of Kathleen Sampeck, ECF No. 82,

---

to an individual who sustained disabling physical injuries from a car accident that prevented him from earning a living.  Importantly, *Anderson* does not undermine the well-settled principle that a plaintiff seeking to recover damages bears the burden of establishing that he was injured and how his injuries are causally related to the damage he suffered (in this case, the loss of earning capacity).  Mr. DeRosier has failed to do so.

Exh. 17.)  Moreover, Ms. Sampeck's report, even if accepted at face value, does not offer

meaningful support to Mr. DeRosier's damages claims.  Although Mr. DeRosier is somewhat

unclear about the purpose for which Ms. Sampeck's report is proffered, it is presumably intended

to substantiate his vague claims for *non*-economic damages.  Ms. Sampeck's cursory

observations that Mr. DeRosier has "suffered . . . the loss of his lifelong dream, his self-identity

as an athlete, his self-confidence and self-esteem, his reputation, and his ability to trust others"

(*id.* at 3), however, fall far short of meeting the courts' rigorous standard for recovering non-

economic losses.

Plaintiffs seeking to recover damages for emotional distress, mental anguish, or other

non-economic losses must show that the losses are "proximately caused by the wrongful act of

the defendant and . . .  result[] in a physical injury or [are] capable of objective determination."

*Beynon v. Montgomery Cablevision Ltd. P'ship*, 351 Md. 460, 504-05 (1998) (internal citations

omitted).  Maryland courts have expressed some skepticism about non-economic damages and

have consistently demanded "a sufficient guarantee of genuineness" as a prerequisite to granting

them.  *Vance v. Vance*, 286 Md. 490, 498 (1979).  Generally, Maryland courts have required

plaintiffs to establish a "clearly apparent and substantial physical injury" accompanying or

underlying the alleged non-economic losses in order to recover for damages.  *Hoffman v.

Stamper,* 385 Md. 1, 36-38 (2005) (internal quotations omitted); *see also Beynon,* 351 Md. at 507

("Physical injury . . .  provides the objective manifestation of the alleged emotional injury and . .

. serves as the yardstick by which a tort victim's emotional harm may be measured.  Such an

objective determination provides reasonable assurance that the claim is not spurious.") (internal

quotations omitted).  Limited exceptions to the physical injury requirement have been made

where "the injury for which recovery is sought is capable of objective determination."  *Hoffman,*

385 Md. at 34.  Courts have held, for example, that "depression, inability to work or perform routine household chores, loss of appetite, insomnia, nightmares, loss of weight, extreme nervousness and irritability, withdrawal from socialization, fainting, chest pains, headaches, and upset stomachs" resulting from tortious acts may constitute sufficiently "objective" evidence of non-economic losses to warrant damages.  *Id.* at 34-35.

In this case, Mr. DeRosier's complaint does not allege or document any physical injuries resulting from his consumption of Jack3d that might support an accompanying award of non-economic damages.  Furthermore, he does not present documentable non-economic injuries of the type that Maryland courts have recognized as a basis for awarding the non-economic damages he seeks.  Ms. Sampeck's three-page report alleging no objectively perceptible impact on Mr. DeRosier from his consumption of the Jack3d supplement is insufficient to support the grant of non-economic damages.

Having thus failed to establish damages or harm resulting from the defendants' allegedly tortious acts, Mr. DeRosier cannot meet his burden to establish a prima facie case on any of the claims he sets forth.  Although the defendants offer other grounds for summary judgment which may be persuasive, the court need not reach them.

**Attorney's Fees**

The defendants have moved for the award of attorney's fees pursuant to the Maryland Consumer Protection Act or Maryland Rule 1-341.  (*See* Defendants' Motion for Summary Judgment, ECF No. 63, at 46-48.)  The defendants claim they are entitled to attorney's fees because Mr. DeRosier's counsel "proceeded without any due diligence at all to corroborate Plaintiff's story," such as by contacting Nike or verifying Mr. DeRosier's story with his former manager.  (*Id.* at 47.)  Moreover, the defendants contend that "it should have been . . . apparent

that [Mr. DeRosier's] 'friend' and mentor, Mr. Merriweather, who is providing his testimony for

free, is basing his expert testimony on no objective facts of specific knowledge . . . ." (*Id.* at 48.)

Maryland Rule 1-341 provides that:

> In any civil action, if the court finds that the conduct of any party in maintaining or
> defending any proceeding was in bad faith or without substantial justification the court
> may require the offending party or the attorney advising the conduct or both of them to
> pay to the adverse party the costs of the proceeding and the reasonable expenses,
> including reasonable attorney's fees, incurred by the adverse party in opposing it.

Md. Rule 1-341.  The defendants make no argument that Mr. DeRosier acted in bad faith, but

contend that he maintained the proceeding against them "without substantial justification" such

that this court should therefore award attorney's fees.

 "[C]onduct lacks substantial justification when there is no basis in law and/or in fact to

support the plaintiff's claim against the defendants who seek fees and costs." *Johnson v. Baker,*

84 Md. App. 521, 529 (1990) (*citing Brady v. Hartford Fire Insurance Co.,* 610 F.Supp. 735,

738 (D.Md.1985)).  Maryland courts have clarified that "[t]his does not mean, however, that the

prevailing party is entitled to attorney's fees because the opposing party misconceived the legal

basis upon which he sought to prevail, or that a litigant is to be penalized for innovation or

exploration beyond existing legal horizons unless such exploration is frivolous." *Id.* (internal

quotations and citations omitted).

Ultimately, the "award of counsel fees [pursuant] to Rule 1-341 is an extraordinary

remedy, which should be exercised only in rare and exceptional cases." *Thomas v. Capital Med.*

*Mgmt. Associates, LLC,* 189 Md. App. 439, 473 (2009) (citing *Garcia v. Foulger Pratt Dev.,*

*Inc.,* 155 Md.App. 634, 678(2003)) (internal quotations omitted).  Courts have emphasized that

"a party need only assert a *colorable* claim or defense to escape Rule 1-341 sanctions," and held

that "[t]he rule should be utilized judiciously." *Legal Aid Bureau, Inc. v. Bishop's Garth*

*Associates Ltd. P'ship*, 75 Md. App. 214, 223 (1988) (emphasis in original).

Although this court has granted summary judgment to the defendants, the court does not find that Mr. DeRosier failed to assert a colorable claim against the defendants or that this case is among the "rare and exceptional cases" in which attorney's fees are warranted. *Thomas v,* 189 Md. App. at 473.[13]  While Mr. Merriweather's report lacked reliability, it was not frivolous to proffer Mr. Merriweather as an expert. *See, e.g, Studio A Entm't, Inc. v. Action DVD*, 658 F. Supp. 2d 851, 856 (N.D. Ohio 2009) ("While the court agrees that this report was unreliable, counsel's submission of the report does not warrant sanctions against him.  In striking this report, the court found that the expert's conclusions were unreliable because of the methods used . . . . The court, however, did not find that Ban was unqualified to offer his conclusions on these issues.  Even though Ban lacked expertise in the . . . industry specifically, his resume indicates that he has substantial knowledge in the [broader field].")

For all the above reasons, both the defendants' motion to exclude the testimony of plaintiff's proposed expert and defendants' motion for summary judgment will be granted. Defendant's request for attorney's fees will be denied.

A separate Order follows.

November 17, 2011                                    /s/
Date                                                 Catherine C. Blake
                                                     United States District Judge

---

[13] Defendants also request attorney's fees under the Maryland Consumer Protection Act (MDCPA), § 13-408(c), which provides that "[i]f it appears to the satisfaction of the court, at any time, that an [MDCPA] action is brought in bad faith or is of a frivolous nature, the court may order the offending party to pay to the other party reasonable attorney's fees."  Attorney's fees under this provision have been very rarely granted and only where the plaintiff's action was patently contrary to the MDCPA statute.  *See Wheeler v. Leonard*, 2010 WL 1141199 *5 (D. Md. Mar. 22, 2010) (unpublished) (granting attorney's fees where "plaintiffs maintained a frivolous MCPA claim against Defendants despite the MCPA's clear instruction that the statute does not apply to real estate brokers and salespersons.")  This court declines to grant attorney's fees under the MDCPA for the same reasons that attorney's fees under Maryland Rule 1-341 are not warranted.